(C.D. 2210)

F. W. MYERS & Co., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 19, 1960)

*Barnes, Richardson & Colburn (Joseph Schwartz* and *Paul J. Gavin* of counsel) for the plaintiff.
*George Cochran Doub,* Assistant Attorney General (*Samuel D. Spector* and *Alfred A. Taylor, Jr.,* trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: Adversary counsel have stipulated and agreed that the importation in controversy "consists of dry sand carbon steel or alloy steel castings for valves which have been heat treated by annealing after casting."

It was further agreed that the merchandise was ordered in accordance with the following specifications of the American Society For Testing Materials:

> Entry number 6404, Specification number A216
> Entry number 6467, Specification number A217
> Entry number 6276, Specification number A216
> Entry number 7016, Specification number A217
> Entry number 5726, Specification number A216
> Entry number 6909, Specification number A216

Specifications A216 and A217, *supra,* are set forth on pages 173 to 184, inclusive, of a book entitled "ASTM Specifications for Steel Piping Materials," which was received in evidence as plaintiff's collective exhibit 1, and it was agreed by counsel for the parties that the subject merchandise conformed to the respective specifications of A216 and A217, as described in exhibit 1.

The collector of customs classified the merchandise as articles or wares not specially provided for, whether partly or wholly manufactured, composed wholly or in chief value of steel, and duty was imposed thereon at the rate of 21 per centum ad valorem as provided in paragraph 397 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 397), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108.

Plaintiff contends that the castings, in their condition as imported, notwithstanding the annealing process to which they were subjected after casting, should be classified in paragraph 304 of said act (19 U.S.C. § 1001, par. 304), as modified by the Torquay protocol to said general agreement, 86 Treas. Dec. 121, T.D. 52739, which provides for "all descriptions and shapes of dry sand, loam, or iron molded steel castings * * * all the foregoing valued over 16 cents per pound" and subjected to duty at the rate of 12½ per centum ad valorem, except that those shipments containing certain alloys would be subject to additional duties specified in paragraph 305 of said act (19 U.S.C. § 1001, par. 305), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and the Torquay protocol thereto, *supra*.

The pertinent text of the competing statutes is here set forth:

Paragraph 397, as modified, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\* \* \* \* \* \* \*

Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\* \* \* \* \* \* \*

Not wholly or in chief value of tin plate:
Carriages, * * *

\* \* \* \* \* \* \*

Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum * * *_____ 21% ad val.

Paragraph 304, as modified, *supra*:

* * * all descriptions and shapes of dry sand, loam, or iron molded steel castings; sheets and plates and steel not specially provided for; all the foregoing valued over 16 cents per pound_____ 12½% ad val.

Paragraph 305, as modified by the general agreement, *supra*:

The additional duties to be levied, collected, and paid under paragraph 305, Tariff Act of 1930, on all steel or iron in the materials and articles enumerated or described in paragraphs 303, 304, 307, 308, 312, 313, 315, 316, 317, 318, 319, 322, 323, 324, 327, and 328, Tariff Act of 1930, shall be as follows:

If such steel or iron contains more than one-tenth of 1 per centum of vanadium, or more than two-tenths of 1 per centum of tungsten, molybdenum, or chromium, or more than six-tenths of 1 per centum of nickel, cobalt, or any other metallic element used in alloying steel or iron_____ 4% ad val.; and

an additional cumulative duty.

\* \* \* \* \* \* \*

On the chromium content in excess of two-tenths of 1 per centum_____ 1½¢ per lb.

Paragraph 305, as modified by the Torquay protocol, *supra*:

The additional cumulative duty under paragraph 305(2), Tariff Act of 1930, on account of molybdenum over 0.2% contained in steel or iron shall be _____ 35¢ per lb.

We are not favored in this case with any oral testimony describing the process of casting or of annealing. Consequently, we shall draw upon our judicial knowledge aided by such authoritative sources as may be deemed appropriate for that purpose.

First, we shall refer to collective exhibit 1 which contains the specifications for the imported articles identified as specification numbers A216 and A217, which are set forth on pages 173 to 184, inclusive, of said exhibit.

We quote the following from page 173, under the heading of "Heat Treatment," dealing with specification A216:

3. (*a*) All castings shall receive a heat treatment proper to their design and chemical composition.

(*b*) Heat treatment, unless otherwise specified by the purchaser, shall consist of full annealing, or of normalizing followed by full annealing, or of normalizing followed by drawing to a temperature below the critical range, or of full annealing followed by normalizing followed by drawing to a temperature below the critical range. No castings which have been quenched in any liquid medium shall be offered under the specifications except by agreement between the manufacturer and the purchaser.

(*c*) All castings that are to be heat treated in any manner shall have been allowed to cool, after pouring, to a temperature below the critical range.

(*d*) *Full Annealing.*—The procedure for full annealing shall consist in uniformly heating the castings to the proper temperature above the critical range, and cooling uniformly in the furnace.

\*       \*       \*       \*       \*       \*       \*

The following is quoted from pages 178 and 179 of said collective exhibit 1, with reference to specification A217:

Scope

1. (*a*) These specifications cover alloy steel castings for valves, flanges, fittings and other pressure containing parts (Note 1) intended primarily for high-temperature and corrosive services (Note 2).

\*       \*       \*       \*       \*       \*       \*

Heat Treatment

3. (*a*) All castings shall receive a heat treatment proper to their design and chemical composition.

(*b*) Heat treatment shall be performed before machining except in instances when reheat-treating is necessary. Unless the method of heat treatment is specified by the purchaser, thus becoming a matter of agreement with the manufacturer, the type of heat treatment used shall be at the option of the manufacturer. This latter condition must necessarily apply for stock purposes.

(c)  Heat treatment may consist of full annealing, or of normalizing followed by full annealing, or of normalizing followed by tempering at a temperature below the critical range, or of full annealing followed by normalizing followed by tempering at a temperature below the critical range.  No castings which have been quenched in any liquid medium shall be offered under these specifications except by agreement between the manufacturer and the purchaser.

\*  \*  \*  \*  \*  \*  \*

(f)  *Normalizing.*—The procedure for normalizing shall consist in heating the casting to the proper temperature above the critical range, and cooling in air to a temperature below the critical range.

(g)  *Tempering.*—The procedure for tempering shall consist in heating the castings to a temperature below the critical range but not less than 1100 F. (Note 5) and holding at that temperature not less than 1 hr. per inch or less of section, followed by cooling in the furnace or in air.

The foregoing descriptive matter clearly indicates that the process of annealing is a substantial and important one applied to castings after they emerge from the mold.   As pointed out in the extracts above quoted, the annealing process equips castings "for assembly with other castings or wrought steel parts by fusion welding"; and, with respect to alloy steel castings for valves (A217), the heating or annealing process prepares them "primarily for high-temperature and corrosive services."

Plaintiff, in its brief, invites our attention to the following definitions of the word "anneal":

Webster's Dictionary—

anneal \* \* \* (3)   To subject to high heat, with subsequent cooling, for the purpose of softening thoroughly and rendering less brittle.  In some cases, as for glass and steel, the cooling must be gradual; in others, as for copper and brass, it may be sudden.  It is believed that annealing reduces brittleness by removing the strains that have been induced in the material by some previous treatment.

(4)   Figuratively, to temper or toughen; make enduring.

Funk & Wagnalls Dictionary—

anneal (1)   To reduce brittleness and increase the softness and toughness of, as glass and various metals, by heating and then slowly cooling.

\*  \*  \*  \*  \*  \*  \*

(3)   Figuratively, to toughen; temper; render enduring.

Based upon these definitions, plaintiff draws the conclusion "that the mere annealing of a casting does not take it out of Paragraphs 304 and 305."   On the contrary, it would seem that the act of annealing performs a very important result in that it reduces the brittleness of the casting and increases its toughness and enduring qualities.

Defendant invites our attention to the following judicial authorities: *Mountain Copper Co.* v. *United States,* 40 Treas. Dec. 103, T.D. 38823, and *F. W. Myers & Co.* v. *United States,* 37 Treas. Dec. 117, T.D. 38154.

In both of these cases, the court was dealing with products of steel which had been finished and made ready for their intended use. In the *Mountain Copper* case, *supra*, the merchandise consisted of 28 rectangular castings, which when assembled and installed in place, constituted one complete concave or lining for a stone-crushing machine.

In the *Myers* case, *supra*, so-called car replacers, made by a casting process, but subsequently annealed and dipped in japan, were likewise finished articles ready for their intended use.

In disposing of the claim that the articles in the *Mountain Copper* case, *supra*, were not classifiable as castings in their imported condition, this court, then the Board of General Appraisers, stated in part as follows:

For the reasons set forth in our ruling, G.A. 8294 (T.D. 38154) [the *Myers* case, *supra*], on car replacers, we answer the third of the above questions by holding the present articles to be excluded from paragraph 110 because they were annealed after they were cast. As pointed out in said ruling, annealing ordinarily forms no part of the usual casting process, and articles so subsequently treated have thereby been further advanced in manufacture beyond the point where they may be considered mere castings.

The *Myers* case also contains quotations from scientific textbooks, such as Knight's American Mechanical Dictionary (vol. 1, p. 110) and a work entitled "The Manufacture and Properties of Iron and Steel," by H. H. Campbell (chapter XV, p. 274, entitled "Heat treatment"), describing the process of annealing which harmonizes with that quoted earlier in this opinion from collective exhibit 1.

Another judicial authority upon the subject of castings referred to in the *Myers* case, *supra*, is *John Bromley & Sons* v. *United States*, 154 Fed. 399. In affirming the judgment of the Board of General Appraisers, Holland, D. J., quoted with approval from the opinion below, as follows:

* * * On motion of the counsel for the government, the testimony taken in the case passed on in G.A. 6,070 (T.D. 26,478) was made a part of the record in the present case, and it is to the effect that the word "castings" in the trade does not include articles made by the casting process which have been advanced in condition by work bestowed on them after they were cast.

The judgment of the district court was affirmed by the Circuit Court of Appeals, Third Circuit, in *John Bromley & Sons* v. *United States*, 156 Fed. 958. The case referred to in the above quotation, "T.D. 26,478," is *Thomas Prosser & Son* v. *United States*, 9 Treas. Dec. 1054, decided June 9, 1905.

Upon the authorities cited and for the reasons stated, we find and hold that the subject merchandise has been advanced beyond the status of mere castings by virtue of the annealing process to which it was subjected subsequent to being cast.

The protest is, therefore, overruled and judgment will issue accordingly.